UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

AMADO MUNGUIA REYES, *on behalf of himself
and all others similarly situated*

                             Plaintiff,

             v.

BELLEROSE HALAL MEAT INC., HICKSVILLE
SUPER HALAL MEAT INC., MEADOWS
HALAL MEAT & GRILL INC., SHIRAZ KHAN,
MIAN S. ALI, ASHRAF R. KHAN, and
MUHAMMAD AWAN,

                         Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
21-CV-6413 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff Amado Munguia Reyes ("Reyes") commenced this action on behalf of himself and other similarly situated employees on November 18, 2021, against Defendants Bellerose Halal Meat Inc. ("Bellerose Halal"), Hicksville Super Halal Meat Inc. ("Hicksville Super"), Meadows Halal Meat & Grill Inc. ("Meadows Halal") (collectively, the "Corporate Defendants"), Shiraz Khan, Mian S. Ali, Ashraf R. Khan, and Muhammad Awan (collectively, the "Individual Defendants"). (Compl., Docket Entry No. 1.) Plaintiff alleges Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law § 190 *et seq.* and 650 *et seq* ("NYLL") by failing to (1) pay him and class members the applicable minimum wage, (2) pay him and class members overtime compensation, (3) provide him and class members with a wage notice and weekly wage statements, and (4) failed to pay him and class members a "spread of hours" premium for each day where an employee's workday exceeded ten hours. (*See id*. ¶¶ 60–91.) On June 17, 2024, Defendants' counsel moved

to withdraw as counsel, (Proposed Order to Show Cause, Docket Entry No. 43), and on July 1, 2024, the Court granted defense counsel's motion to withdraw and ordered Defendants to retain counsel, (Order dated July 1, 2024).  Defendants failed to retain counsel and failed to subsequently appear or otherwise respond to this action.

On September 16, 2024, Plaintiff moved for default judgment against Defendants.[1]  For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion for default judgment.

## I.    Background

### a.    Factual background

Plaintiff is a former employee of Defendants who resides in Queens County, New York.[2] (Compl. ¶ 5.)  Corporate Defendants are domestic corporations organized and existing under the laws of the State of New York.  (*Id.* ¶¶ 6–11.)  Bellerose Halal owns and operates a butcher shop/meat market located at 253-06 Hillside Avenue, Bellerose, New York.  (*Id.* ¶ 7.)  Hicksville

---

[1]  (Pl.'s Mot. for Default J. (Pl.'s Mot."), Docket Entry No. 53; Pl.'s Mem in Supp. of Pl.'s Mot. ("Pl.'s Mem."), Docket Entry No. 56; Decl. of Justin Cilenti ("Cilenti Decl."), Docket Entry No. 55.)

[2]  The Court assumes the truth of the factual allegations in the Complaint for purposes of this Memorandum and Order.  *See Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 188 (2d Cir. 2015) (per curiam) (noting that courts must accept allegations in the complaint as true "in deciding whether a default judgment is appropriate").  "Where there are discrepancies between factual allegations in the . . . Complaint and the signed declarations . . . of Plaintiffs, [the Court may] rel[y] on the facts in the . . . declarations to resolve liability and calculate damages." *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 256 n. 4 (E.D.N.Y. 2024); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 29 (E.D.N.Y. 2015) ("A court may rely on 'detailed affidavits and documentary evidence,' in addition to the plaintiff's complaint, to determine the sufficiency of a default judgment claim." (citation omitted)).  "Plaintiffs' affidavits and declarations are 'presumed to be correct in the absence of any rebuttal evidence proffered by Defendants.'" *Cao*, 727 F. Supp. 3d at 256 n. 4 (quoting *Duro v. BZR Piping & Heating Inc.*, No. 10-CV-0879, 2011 WL 710449, at *3 (E.D.N.Y. Jan. 26, 2011), *report and recommendation adopted*, 2011 WL 744156 (E.D.N.Y. Feb. 22, 2011)).

Super owns and operates a butcher shop/meat market located at 410 South Broadway, Hicksville, New York.  (*Id.* ¶ 9.)  Meadows Halal owns and operates a butcher shop/meat market at 184-18 Horace Harding Expressway, Fresh Meadows, New York.  (*Id.* ¶ 11.)  Mian S. Ali is the Chief Executive Officer and shareholder of Bellerose Halal and is sued in his capacity as an owner, director, supervisor, managing agent, and proprietor of Bellerose Halal.  (*Id.* ¶ 12.)  Shiraz Khan, Ashraf R. Khan and Muhammad Awan are officers and shareholders of Hicksville Super and Meadows Halal and are sued in their capacities as owners, directors, supervisors, managing agents, and proprietors of Hicksville Super and Meadows Halal.  (*Id.* ¶¶ 13–14.)  Plaintiff alleges that the Individual Defendants "jointly exercise[] control over the terms and conditions of Plaintiff's employment" as they "hire and fire employees," "determine rates and methods of pay," "determine work schedules," "supervise and control the work of the employees," and "create and maintain employment records."  (*Id.* ¶ 15.)

Defendants employed Plaintiff at Bellerose Halal, Hicksville Super, and Meadows Halal from approximately November 3, 2016, until approximately June 18, 2021.  (*Id.* ¶¶ 31, 33, 36, 37, 43.)  Plaintiff worked as a butcher over the duration of his employment.  (*Id.* ¶¶ 31, 33–34, 36–37.)

From approximately November 3, 2016 until approximately December 2019, while working at Bellerose Market and/or Hicksville Super, Plaintiff worked six days per week, nine hours per day on Monday, Tuesday, and Thursday, ten hours per day Friday through Sunday. (Cilenti Decl. ¶ 9.)  During this period, Defendants paid Plaintiff at the rate of $12.00 per hour for the first forty hours per week, and $18.00 per hour for hours worked in excess of forty hours. (*Id.* ¶ 10.)

From approximately January of 2020 until approximately March 15, 2020, while working at Hicksville Super, Plaintiff worked fifty-one hours per week, six days per week, nine hours per day on Monday, Tuesday, and Thursday, ten hours per day Friday through Sunday.  (*Id.* ¶ 11.) During this period, Defendants paid Plaintiff at the rate of $12.00 per hour for the first forty hours per week, and $18.00 per hours for hours worked in excess of forty hours.  (*Id.* ¶ 12.)

From approximately June 15, 2020 until approximately June 18, 2021, Plaintiff worked at Meadows Halal and typically worked fifty-four hours per week.  (*Id.* ¶ 14.)  Plaintiff worked six days per week and although his work schedule fluctuated, he worked nine and one-half hours per day on Monday through Saturday.  (*Id.*)  Defendants paid Reyes a fixed salary of $750.00 per week from approximately June 15, 2020 until December of 2020, and $800.00 per week from January of 2021 until approximately June 18, 2021.  (*Id.* ¶¶ 15–16.)  Plaintiff's pay did not vary when he was required to stay later or work a longer day than his usual schedule.  (*Id.*)  "During this period, Plaintiff was not required to punch a time clock or other time-recording device at the start or end of his work shift."  (Compl. ¶ 44.)

During the course of Plaintiff's employment with Defendants, Defendants did not provide Plaintiff with wage statements, did not maintain time and pay records, and paid Plaintiff partly by check and partly by cash.  (*Id.* ¶¶ 32, 41–42, 45–47.)

**b.  Procedural history**

On April 25, 2023, the Court scheduled a telephonic conference for May 1, 2023 where defense counsel failed to appear.  (Order dated May 1, 2023.)  The Court cautioned counsel "that continued failure to comply with [the] Court's order, including complying with [the] discovery schedule, may result in sanctions."  (*Id.*)  On September 13, 2023, another telephonic conference was held where the Court denied defense counsel's application for an extension of the discovery deadline because Defendants failed to "engage in or even initiate discovery until two weeks

before the discovery deadline." (Order dated Sept. 13, 2023.) On October 10, the Court ordered Defendants to "make themselves available for deposition either remotely or in-person prior to November 30, 2023" and warned Defendant that "failure to comply with [the] Order may result in the imposition of sanctions against Defendants." (Order dated Oct. 10, 2023.) On November 15, 2023, the Court ordered Defendants' counsel to show cause as to "why he failed to confer with Plaintiff's counsel and schedule the Court ordered depositions, and why sanctions should not be imposed for his failure to comply with the orders of [the] Court." (Order dated Nov. 15, 2023.) The Court also ordered Defendants to show cause "as to why they . . . failed to comply with [the] Court's orders and appear for their depositions, and why sanctions should not be imposed . . . ." (*Id.*) On November 27, 2023, Defendants' counsel filed a response informing the court that he was not able to contact his clients except on one occasion. (Response to Order to Show Cause, Docket Entry No. 34.) The Court directed defense counsel to either "submit a letter on ECF representing that Defendant's . . . deposition has been scheduled and will take place . . . or . . . file a motion to withdraw as counsel." (Order dated Nov. 29, 2023.) Defendants' counsel represented that "due to his client's failure to communicate with him," he was requesting to withdraw as counsel and the Court scheduled a telephone conference for January 10, 2024. (Proposed Order to Show Cause, Docket Entry No. 35; Aff. in Supp. of Order to Show Cause, annexed to Proposed Order to Show Cause, Docket Entry No. 35-1; Order dated Dec. 18, 2023.) Defendants' counsel later withdrew his request to be relieved as counsel. (Order dated Jan. 10, 2024.)

The parties reached a settlement, (Stipulation, Docket Entry No. 39), but negotiations broke down and Plaintiff filed a pre-motion conference letter seeking permission to move to strike Defendants' answer and have judgment entered against them because of (1) the breakdown

of communications between Defendants and their counsel and (2) Defendants were seemingly no longer interested in participating in litigation, (Pl.'s Pre-Motion Conf. Ltr., Docket Entry No. 41). Defense counsel subsequently filed a letter admitting the factual allegations and requested permission to be relieved as attorneys of record for the Defendants. (Ltr. Of Satish K. Bhatia ("Bhatia Ltr."), Docket Entry No. 42.) On July 1, 2024, the Court granted defense counsel's motion to withdraw and ordered Defendants to obtain new counsel by July 17, 2024, as corporate defendants are "not allowed to continue in a federal litigation unrepresented." (Order dated July 1, 2024.) Defense counsel served a copy of the July 1, 2024 Order on all Defendants by regular first class mail on the same day and emailed a copy of the order to Ashraf R. Khan. (Proof of Service, Docket Entry No. 49.)

On July 24, 2024, Plaintiff filed a pre-motion conference letter informing the Court that Defendants failed to retain new counsel and sought permission "to strike defendants' answer and have default judgment entered against them in accordance with Fed. R. Civ. P. 37(b). (Pl.'s Pre-Motion Conf. Ltr., Docket Entry No. 51.) On September 16, 2024, Plaintiff filed its motion to strike Defendants' answer and default judgment. (Pl.'s Mot.) Defendants did not file an opposition. (*See generally* Docket.)

## II. Discussion

### a. Standards of review

#### i. Rule 37

Rule 37 of the Federal Rules of Civil Procedure authorizes a district court to impose a broad range of sanctions when a party fails to comply with a discovery order. Fed. R. Civ. P. 37(b)(2); *see also Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) (quoting Fed. R. Civ. P. 37(b)(2)); *Roberts v. Bennaceur*, 658 F. App'x 611, 614 (2d Cir. 2016) ("Rule 37(b) allows a district court 'broad discretion in fashioning an appropriate sanction' to address

discovery-related abuses." (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 101 (2d Cir. 2002))); *Lee v. Delta Air Lines, Inc.*, No. 22-CV-8618, 2025 WL 2208856, at *3 (S.D.N.Y. Aug. 4, 2025) ("If a party fails to obey an order to provide or permit discovery, a district court may sanction the transgressing party in numerous ways of varying severity." (quoting *Yukos*, 977 F.3d at 234)), *reconsideration denied*, 2025 WL 2463593 (S.D.N.Y. Aug. 27, 2025).  Pursuant to Rule 37, a district court may, among other available sanctions, "strik[e] pleadings in whole or in part," Fed. R. Civ. P. 37(b)(2)(A)(iii), and "render[] a default judgment against the disobedient party," Fed. R. Civ. P. 37(b)(2)(A)(vi).  When determining the appropriate sanction, district courts should consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance."  *Robertson v. Dowbenko*, 443 F. App'x 659, 660 (2d Cir. 2011) (alteration omitted) (citing *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)); *In re Keurig Green Mt. Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 354 (S.D.N.Y. 2023) ("The Second Circuit has listed four factors for district courts to consider in exercising discretion under Rule 37(b)(2)(A): '(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lower sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party has been warned of the consequences of noncompliance.'" (quoting *S.N.E. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010))).  Though "[t]hese factors are not exclusive and none is dispositive," *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2011 WL 6122265, at *3 (S.D.N.Y. Nov. 28, 2011), *report and recommendation adopted as modified*, No. 10-CV-6071, 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012), "[t]he Second Circuit has held . . . the last factor, whether the non-compliant party had

been warned of the consequence of noncompliance, to be the 'most critical.'" *Chavez v. ABC Corp.*, No. 14-CV-1333, 2016 WL 4076580, at *3 (E.D.N.Y. June 1, 2016) (quoting *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 160 (2d Cir. 2012)), *report and recommendation adopted*, 2016 WL 4154694 (E.D.N.Y. July 29, 2016); *see also In re Keurig*, 673 F. Supp. 3d at 354 ("[T]hese factors are not exclusive and they need not each be resolved against the sanctioned party." (quoting *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 120 (S.D.N.Y. 2018))); *Mintz Fraade L. Firm, P.C. v. Brady*, No. 19-CV-10236, 2021 WL 621206, at *6 (S.D.N.Y. Feb. 17, 2021) ("[W]hether a non-compliant party has been warned of the consequences of its noncompliance 'has been identified as the "most critical"' of the factors[.]").  In addition, harsher sanctions — such as the striking of pleadings and the entry of a default judgment against the non-compliant party — should only be used in "extreme situations," and are to be avoided unless a court finds that the party's failure to comply evidences willfulness, bad faith or fault.  *See Roberts*, 658 F. App'x at 614 (holding that severe sanctions are only appropriate when a court finds "willfulness, bad faith, or any fault on the part of the non[-]compliant party" (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450–51 (2d Cir. 2013))); *see also United States v. M/Y Amadea*, No. 23-CV-9304, 2025 WL 754124, at *11 (S.D.N.Y. Mar. 10, 2025) (noting that, "[w]hile case dispositive sanctions are 'a drastic remedy that should be imposed only in extreme circumstances,' the Second Circuit has 'recognized the propriety of a dismissal sanction where a party fails to comply with court orders willfully, in bad faith, or through fault.'"  (quoting *Carter v. Jablonsky*, 121 F. App'x 888, 889 (2d Cir. 2005))).  "In determining the appropriateness of sanctions, a court 'may consider the full record in the case.'"  *Erdman v. Victor*, 345 F.R.D. 60, 64 (S.D.N.Y. 2024) (quoting *In re Keurig*, 624 F. Supp. 3d at 354); *see also Roberts*, 658 F. App'x at 614 (holding that severe

sanctions are only appropriate when a court finds "willfulness, bad faith, or any fault on the part

of the non[-]compliant party" (quoting *Guggenheim Capital*, 722 F.3d at 450–51 )).  Separately,

Rule 16(f) authorizes a court to "issue any just orders, including those authorized by Rule

37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to appear at a scheduling or other pretrial

conference" or "fails to obey a scheduling or other pretrial order."  Fed R. Civ. P. 16(f)(1).[3]

"When entry of default is an appropriate sanction under [Federal] Rule 37, the [c]ourt proceeds

with [an] analysis under [Federal] Rule 55."  *Caisaguano v. Piccola Vennezia Rest. Inc.*, No. 16-

CV-633, 2025 WL 1272880, at *3 (E.D.N.Y. Mar. 28, 2025) (quoting *Maldonado v. Loxton Inc.*,

No. 20-CV-5776, 2022 WL 18858967, at *6 (E.D.N.Y. June 9, 2022)).

ii.   **Rule 55**

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, there is "a 'two-step

process' for the entry of judgment against a party who fails to defend: first, the entry of a default,

and second, the entry of a default judgment."  *City of New York v. Mickalis Pawn Shop, LLC*,

645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005));

*see also Am. Transit Ins. Co. v. Pierre,* No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar.

19, 2025) (explaining that there is a "'two-step process' for the entry of judgment against a party

who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)).  "[T]he court may, on

plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the

factual allegations of the complaint are taken as true."  *Bricklayers & Allied Craftworkers Loc. 2

v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (citing *Mickalis Pawn

---

[3]  Rule 37(b)(2)(A)(ii)-(vii) authorizes a district court to sanction a party by "striking
pleadings in whole or in part," "staying further proceedings until the order is obeyed,"
"dismissing the action or proceeding in whole or in part," "rendering a default judgment against
the disobedient party," or "treating as contempt of court the failure to obey any order except an
order to submit to a physical or mental examination."  Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii).

*Shop*, 645 F.3d at 137); *see also U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (same); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))).  "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant."  *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *see also Wells Fargo Bank, N.A. v. Queen Tec Support Inc.*, No. 23-CV-4462, 2025 WL 939225, at *3 (E.D.N.Y. Mar. 28, 2025) (explaining that the allegations supporting a default judgment must be "sufficient to state a cause of action against the defendant" (citation omitted)); *LG Funding, LLC v. Fla. Tilt, Inc.*, No. 15-CV-631, 2015 WL 4390453, at *2 (E.D.N.Y. July 15, 2015) ("To determine whether the default judgment should issue, the [c]ourt examines whether 'the factual allegations, accepted as true, provide a proper basis for liability and relief.'" (quoting *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010))).  However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . .  a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; and then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party." *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the

Second Circuit, there is a strong 'preference for resolving disputes on the merits.'" (first quoting *Enron Oil Corp.*, 10 F.3d at 95; and then citing *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 20 (2d Cir. 2020))). "The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Finkel*, 577 F.3d at 83 n.6). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, No. 24-CV-6281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (same).

   **b.    The Court strikes Defendant's answer**

   Plaintiff argues that the four "factors weigh in favor of striking Defendants' [a]nswer." (Pl.'s Mem. 4.)  In support, Plaintiff argues that (1) Defendants' conduct was willful because they have "proffered no explanation for their failure to retain counsel by the July 17, 2024 deadline; (2) a lesser sanction would not be efficacious because "Defendants appear undeterred by any threat of a default judgment; (3) Defendants' failure to retain counsel has "resulted in a complete standstill of pretrial proceedings and . . . on the eve of scheduling of trial"; and (4) Plaintiff is severely prejudiced by Defendants' failure to participate in the litigation because Plaintiff "is denied the opportunity to prosecute his claims."  (*Id.*)

   First, Defendants have previously appeared in this action and are aware of this proceeding and by no longer appearing in the action, they have willfully abandoned their defense.  *Caisaguano*, 2025 WL 1272880, at *3 ("[B]ased on [their] radio silence, 'the only reasonable inference is that defendants willfully abandoned their defense of this case.'") (second

alteration in original) (quoting *Maldonado*, 2022 WL 18858967, at *4); *Maldonado*, 2022 WL 18858967, at *4 (finding that the defendants actions were willful due to their "lack of responsiveness to the [c]ourt's orders").  Defendants have (1) failed to respond to the discovery schedule and appear for depositions by failing to maintain communications with their own counsel, (*see* Pl.'s Pre-Motion Conf. Ltr., Docket Entry No. 41); (2) failed to make the agreed upon settlement payment and failed to communicate to their counsel that they would not show up with the settlement payment, (*see* Bhatia Ltr.); (3) failed to retain counsel as ordered by the Court after their counsel withdrew (Order dated July 1, 2024); and (4) failed to oppose Plaintiff's current motion, (*see generally* Docket).  *United States. v. Real Prop. & Premises Located at 26421 Riverrock Way, Santa Clarita, Cal. 91350-3995, & All Proceeds Traceable Thereto*, No. 15-CV-6762, 2022 WL 2466833, at *2 (E.D.N.Y. May 20, 2022) (stating "[c]ourts in this [d]istrict find a litigant's actions to be willful when there has been unexplained and repeated failure to respond to discovery requests, comply with court orders, and appear in a scheduled hearing." (quoting *Liu v. Millenium Motors Sports, LLC*, No. 17-CV-6438, 2020 WL 7028924, at *3 (E.D.N.Y. Nov. 5, 2020))), *report and recommendation adopted*, 2020 WL 7024378 (June 8, 2022)); *Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996, 2021 WL 6065744, at *3 (E.D.N.Y. Dec. 22, 2021) (same).

Second, because of Defendants willful abandonment and not defending this litigation, imposing default is an appropriate sanction.  "[D]istrict courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *Weir v. C&B Delivery LLC*, 23-CV-9097, 2024 WL 3823432, at *5 (E.D.N.Y. Aug. 13, 2024) (quoting *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F. 3d 123, 148 (2d Cir. 2010)).  "Where defendants willfully abandon their defense of the case, case-ending

sanctions are appropriate." *Caisaguano*, 2025 WL 1272880, at *3 (quoting *Liu*, 2020 WL 7028924, at *4). Prior to defense counsel's withdrawal, there was a "complete breakdown in attorney/client communications." (Scheduling Order June 18, 2024.) After Defendants' counsel's withdrawal from the case on July 1, 2024, Defendants failed to obtain new counsel contrary to a court order, and Defendants have failed to subsequently litigate or appear in the action. (Scheduling Order dated July 1, 2024.) The second factor weighs in favor of imposing default as a sanction. *Caisaguano*, 2025 WL 1272880, at *3 ("[L]esser sanctions would not achieve compliance or have the necessary deterrent effect." (quoting *Liu*, 2020 WL 7028924, at *4)); *see McDowall v. ILKB LLC*, No. 20-CV-6171, 2023 WL 3570669 (E.D.N.Y. May 19, 2023) (finding factor weighed in favor of granting the plaintiffs' motion to strike the answer and enter default judgment where "the [d]efendants . . . willfully abandoned the defense of their case" by failing to appear at "court-mandated discovery conferences since [their counsel's] withdrawal," failing to "communicate with the [c]ourt or [the p]laintiff," and failing to "file[] any opposition to [the plaintiff's [m]otion").

Third, Defendants have failed to comply with orders from the court for over a year. "Courts 'have found noncompliance for a period of several months sufficient to warrant dismissal or default.'" *In re Keurig*, 624 F.3d at 361 (quoting *Urbont v. Sony Music Entm't*, No. 11-CV-4516, 2014 WL 6433347, at *3 (S.D.N.Y. Nov. 6, 2014) (collecting cases)). This factor weighs in favor of Plaintiff's motion to strike Defendants' answer because Defendants previously failed to comply with the discovery process for over a year, (*see* Order to Show Cause, Docket Entry No. 32), and while the Defendants did subsequently engage in settlement negotiations, they failed to make the agreed upon settlement payment and failed to communicate to their counsel that they would not make the settlement payment, (*see* Bhatia Ltr). Because of

the breakdown of communications, defense counsel withdrew on July 1, 2024, and Defendants failed to litigate the action or communicate with the parties or the Court for fourteen months. *See Abouelmakarem v. MDNMA Inc.*, No. 21-CV-10625, 2023 WL 3559392, at *8 (S.D.N.Y. May 18, 2023) (finding that four months of noncompliance with the discovery process weighed in favor of "significant sanctions"); *Urbont*, 2014 WL 6433347, at *4 (granting default against defendant who "made no contact with counsel or the [c]ourt for over six months").

Finally, Defendants were warned that continued noncompliance could result in dismissal. "[S]evere sanctions like dismissal or default should be imposed only if the party has been warned that such a sanction will follow from continued noncompliance and has nevertheless refused to comply." *McDowall*, 2023 WL 3570669, at *4 (alteration in original) (quoting *Urbont*, 2014 WL 6433347, at *3). The Court warned the Corporate Defendants that "a corporate entity is not allowed to continue in a federal litigation unrepresented" and the Defendants failed to retain counsel despite being on notice of the July 1, 202 Scheduling Order. (Scheduling Order dated July 1, 202; Proof of Service, Docket Entry No. 49.) In the July 1, 202 Scheduling Order, the Court also advised Plaintiff that he may proceed to seek a pre-motion conference if counsel did not appear on behalf of the Defendants by the July 17, 2024 deadline so Defendants were on notice of the potential motion practice in the event they failed to retain counsel. (Scheduling Order dated July 1, 2024.) Plaintiff filed its current motion and Defendant failed to oppose the motion. (Pl.'s Mot.; *see generally* Docket.) *McDowall*, 2023 WL 3570669, at *4 (finding factor weighed in favor of granting the plaintiff's motion where the corporate defendant was warned "that it cannot proceed *pro se* and [had to] retain counsel" and defendants were on notice that "[the p]laintiffs would seek to strike their [a]nswer and have entries of default entered against them" and the defendants failed to respond).

Upon evaluation of the above factors, the Court concludes that Defendants' actions warrant striking of their answer and rendering a default judgment in Plaintiff's favor on its claims for which well-pleaded allegations in the Complaint establish Defendants' liability.  The Court considers Plaintiff's FLSA and NYLL claims below.

### c.  Default judgment

Plaintiff moves for a default judgment against Defendants.  In support, he repeats his arguments made in support of his motion to strike Defendants' Answer.  (Pl.'s Mem 5–6.)  In addition, Plaintiff argues he properly alleged that (1) "he failed to be paid at least the applicable minimum wage in effect during a portion of his employment"; (2) he "worked in excess of forty . . . hours per week, but that Defendants failed to pay him overtime compensation"; and (3) "Defendants failed to provide him with a wage notice and weekly wage statements."  (Cilenti Decl. ¶¶ 30, 34.)

### i.  Statute of limitations

Under the FLSA, claims for non-willful violations must be filed within two years and willful violations must be filed within three years.  29 U.S.C. § 255(a); *see also Perry v. City of New York*, 78 F.4th 502, 521 (2d Cir. 2023) (explaining that a jury's finding that the defendants willfully violated the FLSA extended the statute of limitations from two to three years); *Byer v. Periodontal Health Specialists of Rochester, PLLC*, No. 20-CV-1751, 2021 WL 3276725, at *1 (2d Cir. Aug. 2, 2021) ("The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" (quoting *Parada v. Banco Indus. De Venez., C.A.*, 753 F.3d 62, 70 (2d Cir. 2014))).  To establish willfulness for purposes of the FLSA statute of limitations, a plaintiff must show that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act."

*Perry*, 78 F.4th at 520 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)); *see also Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 324 (2d Cir. 2021) ("[I]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995))); *Shu Qin Xu v. Wai Mei Ho*, 111 F. Supp. 3d 274, 280 (E.D.N.Y. 2015) (finding willfulness where the defendants did "not dispute that (1) they did not post FLSA and NYLL notices, (2) they made cash payments, and (3) they did not provide overtime pay"); *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *4–5 (E.D.N.Y. June 18, 2013) (finding willfulness as a matter of law based on the "[d]efendants' method of compensating nearly all of the [p]laintiffs in cash and their arbitrary issuance of W-2s [to only some employees]").

The NYLL has a six-year statute of limitations. NYLL § 198(3) ("[A]n action to recover upon a liability imposed by this article must be commenced within six years"); *Newman v. ASA Coll., Inc.*, 754 F. Supp. 3d 521, 538 (S.D.N.Y. 2024) ("The statute of limitations is six years for claims under the NYLL . . ."); *Galindo v. Yummy Foods Deli Corp.*, No. 21-CV-45, 2024 WL 947283, at *6 (S.D.N.Y. Jan. 17, 2024) ("Under the NYLL, the statute of limitations is six years." (citing NYLL § 198(3))), *report and recommendation adopted*, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914, 2023 WL 6338666, at *5 (E.D.N.Y. Sept. 29, 2023) ("[T]he NYLL establishes a six-year limitations period for wage claims." (citation omitted)), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 20-CV-2914 (E.D.N.Y. Nov. 30, 2023); *Campos Marin v. J&B 693 Corp.*, No. 19-CV-569, 2022 WL 377974, at *5 (S.D.N.Y. Jan. 21, 2022) ("Claims brought pursuant to the NYLL are subject to a six-year statute of limitations." (citing *Byer*, 2021 WL

3276725, at *2)), *report and recommendation adopted sub nom. Marin v. J&B 693 Corp.*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022); *Leon Neri v. Abi Japanese Rest., Inc.*, No. 20-CV-581, 2021 WL 6804252, at *4 n.5 (E.D.N.Y. Nov. 29, 2021) ("The statute of limitations under the NYLL is six years and does not require a showing of willfulness." (citing NYLL § 652)), *aff'd*, 2023 WL 2395995 (2d Cir. Mar. 8, 2023)).

Plaintiff has sufficiently alleged that Defendant's FLSA violations were willful.  In support, Plaintiff alleges that Defendants paid him partly in cash, (Compl. ¶¶ 41–42, 45–46), did not provide overtime pay, (*id.* ¶¶ 23, 41–42, 45–46), and did not provide him with wage statements, (*id.* ¶ 47).  Plaintiff also alleges that Defendants did not provide written notices explaining Plaintiff's regular and overtime rates of pay and their pay day, which omissions require the Court to find that Defendants acted willfully.  (*Id.* ¶ 32); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17-CV-7608, 2020 WL 1130765, at *7 (S.D.N.Y. Mar. 9, 2020) (concluding that allegations that the defendant "failed to post information as required by the FLSA and the NYLL, paid [the plaintiff] in cash, did not have a time-recording system, and did not otherwise require him to record his hours" demonstrated "deliberate conduct in disregard of an employer's obligations"); *Rivera v. Harvest Bakery Inc.*, No. 13-CV-691, 2018 WL 4214337, at *7 (E.D.N.Y. Aug. 17, 2018) (noting that "employers who have paid employees in cash and erratically issued W-2s have been found to have willfully violated the FLSA." (citation omitted)), *report and recommendation adopted*, 2018 WL 4211301 (E.D.N.Y. Sept. 4, 2018); *Medina v. E. Commc'n Inc.*, No. 16-CV-869, 2018 WL 2899658, at *3 (S.D.N.Y. June 11, 2018) (concluding that the defendants' "violations of the law were willful" where they "were aware of the basic overtime rules," "failed to pay [the p]laintiff at the lawful overtime rate," failed "to provide adequate wage notices and wage statements," and failed "to provide any documentation

17

[]such as paystubs"); *cf. Alberto v. Rico Pollo #2 Rest. Corp.*, No. 18-CV-4762, 2018 WL 6813057, at *4 (E.D.N.Y. Dec. 26, 2018) ("[I]f the payments in fixed amounts of cash on a weekly basis without credit for overtime are in fact reflective of a policy and practice of defendants, it is hard to imagine a lack of willfulness"). Because the Court finds that Defendants' violations are willful, the three-year statute of limitations applies to Plaintiff's FLSA claims.

Accordingly, Plaintiff's claims are timely with respect to any FLSA violations that occurred on or after November 18, 2018, and any NYLL violations that occurred on or after November 18, 2015, *i.e.*, three years and six years, respectively, prior to the filing of the Complaint on November 18, 2021.

### ii.   Defendants are eligible employers under the FLSA and NYLL

Plaintiff has properly alleged that Defendants are eligible employers under the FLSA and NYLL.

### 1.   Corporate Defendants

"The FLSA contains two primary worker protections: first, it guarantees covered employees a federal minimum wage; and second, it provides covered employees the right to overtime pay at a rate of one-and-a-half their regular rate for hours worked above forty hours a week." *Mei Xing Yu v. Hasaki Rest., Inc.*, 944 F.3d 395, 402 (2d Cir. 2019) (footnote omitted). To qualify as a covered employee, an employee must be either (1) "engaged in commerce or in the production of goods for commerce" (individual coverage) or (2) "employed in an enterprise engaged in commerce or in the production of goods for commerce" (enterprise coverage). 29 U.S.C. §§ 206(a), 207(a)(1); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 86 n.2 (2d Cir. 2013). The FLSA defines "[e]nterprise engaged in commerce or in the production of goods for commerce," as a business that (1) "has employees engaged in commerce or in the production of

goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) has an annual gross revenue of at least $500,000.  29 U.S.C. § 203(s)(1)(A); *see Mendez v. MCSS Rest. Corp.*, 564 F. Supp. 3d 195, 205 (E.D.N.Y. 2021) (defining the conditions for enterprise coverage).  As for the annual sales requirement, "virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA."  *Soto v. Miss Laser Inc.*, No. 19-CV-04745, 2023 WL 319547, at *4 (E.D.N.Y. Jan. 19, 2023) (quoting *Kantor v. Air Atl. Med., P.C.*, No. 19-CV-03597, 2021 WL 3888067, at *6 (E.D.N.Y. July 7, 2021)); *see also Quito v. Zheng*, 710 F. App'x 28, 29 (2d Cir. 2018) (noting that "annual sales exceeding $500,000 . . . is required for relief under the FLSA").[4]

Plaintiff alleges in the Complaint that the Corporate Defendants were "engaged in commerce or in the production of goods for commerce" or "handle, sell or otherwise work on goods or materials that have been moved in or produced for commerce" and "has had an annual gross volume of sales of not less than $500,000."  (Compl. ¶¶ 17–19.)  These allegations are sufficient to establish that the Corporate Defendants qualify as enterprises engaged in interstate commerce.  *Gumaneh v. Vilano Emp. Servs., Inc.*, No. 22-CV-774, 2023 WL 5715613, at *4 (S.D.N.Y. Sept. 5, 2023) (finding that the "[p]laintiffs . . . satisfied the minimal burden by alleging that [the d]efendants 'had revenues and/or transacted business in an amount exceeding

---

[4]  Because the Court finds that the Corporate Defendants qualify as an "employer" under the FLSA and "the NYLL's definition of 'employer' is coextensive with the FLSA's definition," Corporate Defendants also qualify as Plaintiff's employer under the NYLL.  *Bocon v. 419 Manhattan Ave. LLC*, No. 23-CV-3502, 2025 WL 832730, at *7 (E.D.N.Y. Mar. 18, 2025) (quoting *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-02180, 2022 WL 1018791, at *7 (E.D.N.Y. Mar. 16, 2022), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. April 5, 2022)), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 23-CV-3502 (Mar. 31, 2025).

$500,000' and conducted business in interstate commerce." (citation omitted)); *Pintor v. Park King at JFK, LLC*, No. 16-CV-6269, 2018 WL 2074157, at *3 (E.D.N.Y. Feb. 21, 2018) (finding the plaintiff's allegations that the defendants "have had 'employees engaged in commerce,' handling selling or otherwise working on goods that have been moved in or produced by commerce, and that the volume of business exceeded $500,000" "sufficient to establish [the d]efendants' employer status." (citation omitted))

## 2.  Individual Defendants

The FLSA creates liability for any "employer" who violates its terms.  *See, e.g.*, 29 U.S.C. § 207(a)(1).  Under the FLSA, an "employer" is defined broadly to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d); *see also id.* § 203(a) (defining "person" as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons").  "Because the statute defines employer in such broad terms, it offers little guidance on whether a given individual is or is not an employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999); *see also Pierre v. City of N.Y.*, No. 20-CV-5116, 2021 WL 3887912, at *6 (S.D.N.Y. Aug. 31, 2021) ("[U]ltimately, it 'offers little guidance on whether a given individual is or is not an employer.'" (quoting *Herman,* 172 F.3d at 139)).  In making that determination, a court should focus on "whether the alleged employer possessed the power to control the workers in question[], with an eye to the 'economic reality' presented by the facts of each case."  *Herman*, 172 F.3d at 139 (citations omitted).

Because the "economic reality" of a relationship drives the analysis as to whether it constitutes an employer-employee relationship for the purposes of the FLSA, the determination must be made on a case-by-case basis in light of the totality of the circumstances and cannot rest on "technical concepts."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013); *see also*

*Sanchez Juarez v. Siderakis*, No. 23-7972, 2024 WL 5135383, at *2 (2d Cir. Dec. 17, 2024)

("[E]mployment for FLSA purposes [is] a flexible concept to be determined on a case-by-case

basis by review of the totality of the circumstances." (alterations in original) (quoting *Irizarry*,

722 F.3d at 104)).  In determining whether a defendant is an "employer," as defined in the

statute, the Second Circuit has identified four factors to consider, including, "whether the alleged

employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records."  *Irizarry*, 722 F.3d at 104–05 (quoting

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)); *see also Ocampo*

*v. Brown & Appel, LLC*, No. 21-2579, 2022 WL 17684587, at *2 n.2 (2d Cir. Dec. 15, 2022)

(quoting same).  These factors do not, however, "comprise a 'rigid rule for the identification of

an FLSA employer,'" but rather provide a guideline "to ensure that the economic realities test

mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect

to the broad language of the FLSA."  *Irizarry*, 722 F.3d at 105 (quoting *Barfield*, 537 F.3d at

143); *see also Sanchez Juarez*, 2024 WL 5135383, at *2 ("No one of the four factors standing

alone is dispositive" (quoting *Tapia v. Blch 3rd Ave LLC*, 906 F.3d 58, 61 (2d Cir. 2018))).  A

district court is "also free to consider any other factors it deems relevant to its assessment of the

economic realities."  *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71–72 (2d Cir. 2003).

      Plaintiffs have established that the Individual Defendants meet the four factors relevant to

determining whether they "possessed the power to control the workers in question," *Herman*,

172 F. 3d at 139, and have therefore shown they qualify as employers under the FLSA and

NYLL.[5]  First, Plaintiff alleges that the Individual Defendants had the power to "hire and fire employees," (Compl ¶¶ 15, 26), which establishes the first factor — whether the alleged employer had the power to hire and fire employees, *see Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22-CV-2256, 2024 WL 3760583, at *9 (E.D.N.Y. July 18, 2024) (finding that the individual defendants qualified as employers under the FLSA where the plaintiff alleged, *inter alia*, that they "managed the day-to-day operations and further had the power to hire and fire employees." (alterations and internal quotation marks omitted)), *report and recommendation adopted*, 2024 WL 3759660 (E.D.N.Y. Aug. 12, 2024).

Second, Plaintiff alleges in the Complaint that the Individual Defendants "jointly exercised control over the terms and conditions of Plaintiff's employment" and had the power to "determine work schedules."  (Compl ¶¶ 15, 26.)  These allegations are sufficient to establish the second factor — whether the alleged employer controlled employee work schedules or conditions of employment.  *See Cooper v. Fire & Ice Trucking, Corp.*, No. 23-CV-1675, 2024 WL 3344001, at *7 (E.D.N.Y. July 9, 2024) (finding that "all four factors support a finding that as a matter of economic reality, the plaintiff had an employer-employee relationship with each defendant" where the plaintiff alleged, *inter alia*, that "the . . . business's owner and manager[] set [the plaintiff's] work schedule and that each of the [d]efendants controlled the conditions of [the plaintiff's] employment").

Third, Plaintiff alleges in the Complaint that the Individual Defendants had the power to "determine rates and methods of pay."  (Compl ¶¶ 15, 26.)  These allegations are sufficient to

---

[5]  Because the Court finds that the Individual Defendants qualify as an "employer" under the FLSA and "the NYLL's definition of 'employer' is coextensive with the FLSA's definition," Individual Defendants also qualify as Plaintiff's employer under the NYLL.  *Bocon*, 2025 WL 832730, at *7  (quoting *Perry*, 2022 WL 1018791, at *7).

establish the third factor — whether the alleged employer determined the rate and method of payment.  *See Davis v. Navada's Bar & Lounge, LLC*, No. 22-CV-4176, 2024 WL 1531092, at *6 (E.D.N.Y. Mar. 1, 2024) (finding that an individual defendant qualified as an employer under the FLSA where the plaintiff alleged, *inter alia*, that he "controlled employee policies, including decisions regarding payroll, payment policy, and compensation practices"), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 22-CV-4176 (Mar. 29, 2024).

Finally, Plaintiff alleges in the Complaint that the Individual Defendants had the power to "create and maintain employment records."  (Compl ¶¶ 15, 26.)  These allegations are sufficient to establish the fourth factor — whether the alleged employer maintained employment records. Plaintiff's allegations are sufficient to establish that the Individual Defendants are also "employers" covered by the FLSA and NYLL.  *See Jacome v. Optical 49, Inc.*, No. 20-CV-02615, 2021 WL 3375134, at *6 (E.D.N.Y. July 9, 2021) (finding that allegations that the individual defendant "owned, operated, and controlled" the corporate defendant and "hired and fired [p]laintiff, set his working conditions, and determined how and how much [he] was paid" were sufficient to "establish that [the individual and corporate defendants] were joint employers"), *report and recommendation adopted*, 2021 WL 3373130 (E.D.N.Y. Aug. 3, 2021).

### iii.   Minimum wage claim

Both the FLSA and the NYLL contain provisions prohibiting employers from paying their employees a rate lower than a certain minimum hourly wage.  29 U.S.C. § 206(b); N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 141-1.3.  The minimum wage under the FLSA is $7.25 an hour; under the NYLL, the minimum wage in Nassau, Suffolk, and Westchester County was $9.00 in 2016, $10.00 in 2017, $11.00 in 2018, $12.00 in 2019, $13.00 in 2020, $14.00 in 2021.  29 U.S.C. § 206(a)(1)(C); NYLL § 652; *see, e.g.*, *Paschalidis v. Airline*

*Rest. Corp.*, No. 20-CV-02804, 2021 WL 5013734, at *4 (E.D.N.Y. Oct. 28, 2021) (applying the

$7.25 federal minimum wage to the plaintiff's employment during early 2020); *see also*

*Zambrano v. Envios Espinoza, Inc.* No. 22-CV-3031, 2025 WL 1808694 at *8 (E.D.N.Y. July 1,

2025) (setting out the applicable minimum wage rates from 2016 to 2021).

"Where a plaintiff brings claims under both the FLSA and the NYLL, he 'may not

receive a double recovery of back wages' or liquated damages under both statutes." *Rodriguez v.*

*New Generation Hardware Store Corp.*, No. 22-CV-4422, 2023 WL 1516908, at *2 (S.D.N.Y.

Feb. 3, 2023) (internal quotation marks omitted) (quoting *Hernandez v. Jrpac Inc.*, No. 14-CV-

4176, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016)); *see also Payamps v. M & M*

*Convenience Deli & Grocery Corp.*, No. 16-CV-4895, 2019 WL 8381264, at *11 (E.D.N.Y.

Dec. 9, 2019) ("When Plaintiffs bring both FLSA and NYLL minimum wage claims

simultaneously, . . . double recovery is prohibited."); *Gamero v. Koodo Sushi Corp.*, 272 F.

Supp. 3d 481, 498 (S.D.N.Y. 2017) (collecting cases). "If 'a plaintiff is entitled to damages

under both federal and state wage law, the [c]ourt has discretion to award [that plaintiff] damages

under the statute providing the greatest amount of relief.'" *Gamero*, 272 F. Supp. 3d at 498

(second alteration in original) (internal quotation marks omitted) (quoting *Hengjin Sun v. China*

*1221, Inc.*, No. 12-CV-7135, 2016 WL 1587242, at *2 (S.D.N.Y. Apr. 19, 2016)).

Defendants paid Plaintiff an hourly rate of $12.00 from approximately November 3, 2016

until December of 2019;[6] an hourly rate of $12.00 from January of 2020 until approximately

March 15, 2020; a fixed salary of $750 per week from approximately June 15, 2020 until

---

[6] Plaintiff does not make any claims for unpaid wages during this period.  (Cilenti Decl.
¶¶ 10.)

December of 2020; and $800 per week from January of 2021 until approximately June 18, 2021.[7]

(Cilenti Decl. ¶¶ 10, 12, 15–16.) Under New York regulations, an employee's "regular hourly

wage rate shall be determined by dividing the total hours worked during the week into the

employee's total earning." N.Y.C.R.R. tit. 12 § 142-2.16. Applying this calculation to

Plaintiff's weekly wages, Defendants paid Plaintiff an hourly wage of $18.75 from

approximately June 15, 2020 until December of 2020; and $20.00 from January of 2021 until

approximately June 18, 2021.[8] Plaintiff's wage was higher than the applicable New York

minimum wage from November 3, 2016 until December of 2019, from approximately June 15,

2020 until December of 2020, and from January of 2021 until approximately June 18, 2021.

However, Plaintiff's wage was lower than the applicable minimum wage between January of

---

[7] Plaintiff did not allege an exact date for his December of 2019, January of 2020, December of 2020, or January of 2021 allegations. Because Plaintiff alleges that he "worked continuously" from November 3, 2016 until "on or about March 22, 2020" and from the time he returned to work on approximately June 12, 2020 until June 18, 2021, (see Compl. ¶¶ 34, 36–37), the Court can reasonably infer that Plaintiff worked consecutively through the adjacent time periods, i.e. December of 2019 means December 31, 2019 and January of 2020 means January 1, 2020. Henry v. Oluwole, 108 F.4th 45, 55 n.5 (2d Cir. 2024) (stating that "[a] court is required to accept all of the [the plaintiff]'s factual allegations as true and draw all reasonable inferences in its favor." (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)).

[8] Under the FLSA and the NYLL, "[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours." Chang v. Clean Air Car Serv. & Parking, Corp., No. 15-CV-04385, 2024 WL 3218830, at *3 (E.D.N.Y. June 28, 2024) (quoting Berrios v. Nicholas Zito Racing Stable, Inc., 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012)); see also Pinovi v. FDD Enterprises, Inc., No. 13-CV-2800, 2015 WL 4126872, at *4 (E.D.N.Y. July 8, 2015) ("The FLSA and the NYLL carry a rebuttable presumption that a weekly salary covers only the first forty hours, unless the parties have an alternate agreement."). The Court has no information indicating that the parties had an alternate agreement regarding the number of hours that Plaintiff's weekly salary was intended to cover. Accordingly, the Court assumes that Plaintiff's weekly salary was intended to cover only the first forty hours of his work each week.

2020 and approximately March 15, 2020.  *See Zambrano*, 2025 WL 1808694 at *9 (explaining that the minimum wage was $13.00 in 2020).  The Court therefore grants Plaintiff's motion for default judgment in part for Plaintiff's minimum wage claims during the January of 2020 to approximately March 15, 2020 employment period.  *See Soto v. Crismeli Deli Grocery Inc.*, No. 19-CV-10053, 2024 WL 3730115, at *8 (S.D.N.Y. June 28, 2024) (awarding unpaid minimum wages where the plaintiff demonstrated that the "defendants failed to pay him the required minimum wage for the first forty hours that he worked on and after December 31, 2017"), *report and recommendation adopted*, 2024 WL 3730300 (S.D.N.Y. Aug. 8, 2024).

From January of 2020 to March 15, 2020, the statutory minimum wage was $13.00 per hour, but Defendants paid Plaintiff $12.00 per hour, resulting in $422.86 in unpaid wages for this period of 10 weeks and 4 days: [(($13.00 - $12.00) x 40 hours per week) x 10 weeks and 4 days = $422.86].[9]

Defendants therefore owe Plaintiff a total of $422.86 on his minimum wage claims.

### iv.  Overtime claim

Both the FLSA and the NYLL provide that employees must be "compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty [hours] per week."  *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013); *see also Agramonte v. Pineridge Communications, Inc.*, No. 23-CV-9029, 2024 WL 5399233, at *6 (E.D.N.Y. Dec. 20, 2024) (quoting *Nakahata*, 723 F.3d at 200).  Both

---

[9]  To calculate the amount of unpaid minimum wages owed to Plaintiff, the Court calculates the difference between the hourly rate that Plaintiff was paid and the applicable statutory minimum, then multiplies that amount by forty hours per week, resulting in the amount of unpaid minimum wages that Defendants owe to Plaintiff for each week during the relevant period.  The Court then multiplies that amount by the number of weeks in the relevant period to determine the total amount owed to Plaintiff for each period.

statutes provide that the regular rate is either the actual rate at which the employee is paid or the statutory minimum wage, whichever is higher.  *See* 29 C.F.R. § 778.107; N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.2 (providing that "[a]n employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's regular rate in the manner and methods provided in" the FLSA); *see also Silva v. Legend Upper West LLC*, No. 16-CV-3552, 2021 WL 4197360, at *10 (S.D.N.Y. Sept. 14, 2021) (calculating the plaintiffs' overtime rate of pay under the FLSA and the NYLL at one and one-half times the minimum wage).  Under the NYLL, a "regular rate" is either the employee's hourly pay or, if the employee is paid on "any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employee's total earnings."  N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.16.  "Plaintiffs cannot recover unpaid overtime compensation under both statutes for any period of statutory overlap."  *Payamps*, 2019 WL 8381264, at *12; *see also Gamero*, 272 F. Supp. 3d at 498 (collecting cases).  Because the overtime wage rate is higher and the statute of limitations longer under the NYLL, the Court assesses Plaintiffs' overtime claims under the NYLL.  *See Gamero*, 272 F. Supp. 3d at 498 ("If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award that plaintiff damages under the statute providing the greatest amount of relief." (internal quotation marks and alterations omitted)).

The NYLL overtime provision applies to Plaintiff's employment from approximately January of 2020 until March 15, 2020, when he was working 51 hours per week; from June 12,

2020 until December of 2020, when he was working 54 hours per week; and from January of 2021 until June 18, 2021, when he was working 54 hours per week.[10]  (Cilenti Decl. ¶¶ 11, 14.)

From January of 2020 to approximately March 15, 2020, the statutory minimum wage of $13.00 per hour results in an overtime premium of $19.50 per hour: ($13.00 per hour x 1.5).[11] Plaintiff worked 11 overtime hours per week during this period of 10 weeks and 4 days, resulting in a total of $$2,267.57 in unpaid overtime wages: [($19.50 per hour x 11 hours per week) x 10 weeks and 4 days = $2,267.57].  From June 15, 2020 to December 31, 2020, Plaintiff's regular rate of pay of $18.75 per hour results in an overtime premium of $28.13 per hour: ($18.75 per hour x 1.5).  Plaintiff worked 14 overtime hours per week during this period of 28 weeks and 3 days, resulting in a total of $11,193.75 in unpaid overtime wages: [($28.12 per hour x 14 hours per week) x 28 weeks and 3 days = $11,193.75].  From January 1, 2021 to June 18, 2021, Plaintiff's regular rate of pay of $20.00 per hour results in an overtime premium of $30.00 ($20.00 per hour x 1.5).  Plaintiff worked 14 overtime hours per week during this period of 24 weeks, resulting in a total of $10,080 in unpaid overtime wages: [($30.00 per hour x 14 hours per week) x 24 weeks = $10,080].

---

[10]  Plaintiff does not make any claims for unpaid wages during the period from approximately November 3, 2016 until December of 2019, when he was working 51 hours per week.  (Cilenti Decl. ¶ 10.)

[11]  To calculate the amount of unpaid overtime, the Court multiplies the greater of Plaintiff's regular rate or the statutory minimum wage by 1.5, resulting in his overtime premium for the relevant period.  The Court then multiplies the overtime premium by the number of overtime hours, *i.e.*, the number of hours worked over forty hours per week, for each week during the relevant period.  Finally, the Court multiplies that number by the total number of weeks in the relevant period, resulting in the total amount of unpaid overtime owed for the relevant time period.

Defendants therefore owe Plaintiff a total of $23,541.32 in lost wages for his unpaid

overtime claims.

### v.    Spread of hours claim

New York law provides that "[a]n employee shall receive one hour's pay at the basic

minimum hourly wage rage . . . for any day in which . . . the spread of hours exceeds [ten]

hours."  N.Y.C.R.R. tit. 12, § 142-3.4; *see Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018).

"Spread of hours" is defined as "the interval between the beginning and end of an employee's

workday," and includes "working time plus time off for meals plus intervals off duty."

N.Y.C.R.R. tit. 12, § 142-2.18*; Alonso Vazquez v. Azoulay,* 834 F. App'x 653, 654 (2d Cir.

2021); *see also Rodriguez v. Ridge Rest., Inc.*, No. 16-CV-254, 2020 WL 7711859, at *5

(E.D.N.Y. Dec. 29, 2020) (describing the spread of hours law).  However, "[o]nly employees

who earn minimum wage 'are eligible for spread-of hours' pay."  *Garzon v. Bldg. Servs. Inc.*,

No. 24-CV-5429, 2025 WL 1871171, at *8 (S.D.N.Y. July 2, 2025) (quoting *Jimenez v. Green

Olive Inc.*, 744 F. Supp. 3d 221, 249 (E.D.N.Y. 2024), *report and recommendation adopted*,

2025 WL 2062741 (S.D.N.Y. July 23, 2025)); *see Gu v. Lemonleaf Thai Rest. Mineola Corp.*,

No. 18-CV-6614, 2024 WL 3813379, at *3 (E.D.N.Y. June 13, 2024) ("The spread of hours pay

has been determined to only apply 'to those employees making minimum wage and not to those

making more than minimum wage.'" (quoting *Shu Qin Xu*, 111 F. Supp. 3d at 281)).

"Entitlement to spread-of hours pay does not extend to employees whose regular rate is above

the statutory minimum wage."  *Ge Chun Wen v. Hair Party 24 Hours Inc.*, No. 15-CV-10186,

2021 WL 3375615, at *10 (S.D.N.Y. May 17, 2021) (collecting cases), *report and

recommendation adopted*, 2021 WL 2767152 (S.D.N.Y. July 2, 2021).

Plaintiff is not entitled to spread of hours pay.  While Plaintiff alleges that he worked

eleven hours per day, six days per week, from about June 12, 2020 through the remainder of his

employment on or about June 18, 2021, his regular rate was higher than the statutory minimum wage during the relevant wage period.  (*See supra* section II.c.i.3.)  *See Ge Chun Wen*, 2021 WL 3375615, at *18 (concluding that the "[p]laintiff is not entitled to, and should not be awarded any . . . spread-of-hours damages" because the "[p]laintiff's base rate of pay . . . exceed the minimum wage rate at all relevant times).  In addition, Plaintiff is not entitled to spread-of-hours pay from November 3, 2016 to March 15, 2020 because he did not allege that he worked more than ten hours per day and instead alleges that his "work shift would occasionally exceed ten (10) hours in a single day" which is not sufficient to establish entitlement to spread-of-hours pay.  (Compl. ¶ 39); *see also Inga v. Nesama Food Corp.*, No. 20-CV-0909, 2021 WL 3624666, at *10 (S.D.N.Y. July 30, 2021) (finding that the plaintiff "failed to provide a sufficient evidentiary basis to establish a claim for spread-of hours damages" where the plaintiff alleges that his "work shift would occasionally exceed ten (10) hours in a single day." (citation and internal quotation marks omitted)).

### vi.   Wage Theft Prevention Act claim

"As of April 9, 2011, an employer must provide an employee with a wage notice within ten business days of the start of employment and then annually every February thereafter." *Carter v. Tuttnaeur U.S.A. Co.*, 78 F. Supp. 3d 564, 569 (E.D.N.Y. 2015) (quoting *Yuquilema v. Manhattan's Hero Corp.*, No. 13-CV-461, 2014 WL 4207106, at *10 (S.D.N.Y. Aug. 20, 2014), *report and recommendation adopted*, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014)).  This notice must include, among other things, (1) "the rate or rates of pay and basis thereof"; (2) "whether paid by the hour, shift, day, week, salary, piece, commission, or other"; (3) "the regular pay day designated by the employer"; (4) "the name of the employer"; (5) "any 'doing business as' names used by the employer"; and (6) "such other information as the commissioner deems material and necessary." NYLL § 195(1)(a); *see Rodriguez*, 2024 WL 3760583, at *13; *see also*

*Mendez*, 564 F. Supp. 3d at 219 (describing the required contents of the wage notice under § 195(1)). "Under Section 195(3), employers must give their employees accurate wage statements that include the dates and hours worked, the rate of pay and additional details." *Ying Ying Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 660 (E.D.N.Y. 2020); *Sanango v. Ruby Nails Tarrytown, Inc.*, No. 20-CV-8245, 2023 WL 2707329, at *4–5 (S.D.N.Y. Mar. 30, 2023) (NYLL § 195(3) "requires that employers provide employees with certain wage statement information 'with every payment of wages.'" (quoting NYLL § 195(3))). An employee who is not given these statements may "recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees." NYLL § 198(1-d). "Pursuant to a 2015 amendment to the law, statutory damages for failure to provide initial hire notices [under NYLL § 195(1)] are $50 per day up to a maximum recovery of $5,000.00 per employee." *Ramos v. CJ Contractor Servs., Inc.*, No. 23-CV-274, 2024 WL 3954330, at *5 (S.D.N.Y. Aug. 2, 2024) (quoting NYLL § 198(1-b)), *report and recommendation adopted*, 2024 WL 3952643 (S.D.N.Y. Aug. 27, 2024); *see Salamanca v. ABC Corp.*, No. 19-CV-1335, 2021 WL 3275902, at *7 (E.D.N.Y. July 15, 2021) ("After February 27, 2015, violations of [NYLL §] 195(1) carry damages of $50 per workday, up to a maximum of $5,000), *report and recommendation adopted*, 2021 WL 3269089 (E.D.N.Y. July 30, 2021).

Plaintiff sufficiently states a claim for violation of the Wage Theft Prevention Act by alleging that "Defendants failed to notify Plaintiff in writing at the time of hire or thereafter of his regular hourly rate of pay, his corresponding overtime rate of pay, and his regularly designated payday," (Compl. ¶ 89), and "Defendants failed to furnish Plaintiff with a proper and accurate statement with every payment of wages listing all hours worked, gross wages,

deductions, and net wages" (*Id.* ¶ 86).  *See Duan v. Studio M. Bar & Lounge Inc.*, No. 20-CV-2240, 2024 WL 4250262, at *10 (E.D.N.Y. Jan. 31, 2024) (finding that the plaintiffs "have adequately stated claims for violations of the [Wage Theft Prevention Act] by the defendants" by alleging that the defendants did not provide wage notices and proper wage statements), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 20-CV-2240 (E.D.N.Y. Feb. 20, 2024).

### vii.  Damages

Plaintiff seeks "$16,536.90 in unpaid minimum wages and overtime compensation, plus an equal amount in liquidated damages" for a total of $33,073.90 in compensatory and liquidated damages.  (Cilenti Decl. ¶¶ 36–37.)  In addition, Plaintiff seeks an award of $10,000 for statutory damages under the Wage Theft Prevention Act.  (Cilenti Decl. ¶ 41.)  Finally, Plaintiff seeks $24,490.00 in attorney's fees and $1,131.00 for costs and expenses in the prosecution of the matter.  (Cilenti Decl. ¶¶ 45, 47.)

### 1.  Actual damages for unpaid minimum wage and overtime claims

As set forth above, Plaintiff is entitled to a total of $23,964.18 in actual damages for unpaid minimum and overtime wages, consisting of $422.86 in unpaid minimum wage and $23,541.32 in overtime wages.  (*See supra* sections II.c.i.3–4.)  However, Plaintiff requests $16,536.90 in actual damages for unpaid minimum and overtime wages and the Court will award only the amount requested by Plaintiff.  *See Pena v. Metro. Wireless Anandpur Inc.*, 21-CV-2239, 2021 WL 5054368, at *3 n.1 (S.D.N.Y. Nov. 1, 2021) (awarding amount requested by the plaintiff even though "[the p]laintiff's request of $1,380.91 appears to underestimate the amount of overtime wages due"); *Trs. of the Sheet Metal Workers' Int'l Ass'n Loc. Union No. 28 Benefit Funds v. Maximum Metal Mfrs, Inc.*, No. 14-CV-2890, 2015 WL 8031380, at *3 (S.D.N.Y. Dec.

7, 2015) (awarding the plaintiff's requested amount); *Leggett & Platt, Inc. v. CM Mattress, LLC*, No. 14-CV-3277, 2015 WL 7281635, at *2 (stating that "[w]here default has been noted, plaintiff's recovery is limited to the amount requested in its [m]otion for [d]efault [j]udgment." (citing Fed. R. Civ. P. 54(c))).

### 2. Liquidated damages

The FLSA provides for the payment of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages," 29 U.S.C. § 216(b), unless "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]," 29 U.S.C. § 260; *see also Bi v. Xia*, No. 18-CV-23, 2024 WL 306693, at *3 (D. Conn. Jan. 3, 2024) ("Under the FLSA, successful plaintiffs may collect 'the payment of wages lost and an additional equal amount as liquidated damages.'" (quoting 29 U.S.C. § 216(b))); *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 380 (E.D.N.Y. 2013) ("The FLSA provides for 'the payment of wages lost and an additional equal amount as liquidated damages[.]'" (quoting 29 U.S.C. § 216(b)).  The employer bears the burden of proving good faith.  *Herman*, 172 F.3d at 142 (citing *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)); *Ruiz v. JHDHA, Inc.*, No. 23-CV-7896, 2024 WL 5077665, at *3 (S.D.N.Y. Dec. 11, 2024) ("The employer bears the burden of proving good faith and reasonableness to avoid an award of liquidated damages."); *Gortat*, 949 F. Supp. 2d at 380 ("The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." (quoting *Herman*, 172 F.3d at 142)).  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman*, 172 F.3d at 142.  "Similarly, under the NYLL, an employee is entitled to 'liquidated damages equal to one hundred percent of the total amount of

wages found to be due,' 'unless the employer proves a good faith basis to believe that its

underpayment of wages was in compliance with the law.'" *Hernandez*, 2016 WL 3248493, at

*34 (quoting NYLL § 198(1-a).  "[C]ourts have not substantively distinguished the federal

standard from the current state standard of good faith." *Stefanovic v. Old Heidelberg Corp.*, 18-

CV-2093, 2022 WL 3928370 at *5 (S.D.N.Y. Aug. 31, 2022) (quoting *Inclan v. N.Y. Hosp. Grp.,*

*Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015)).

Defendants have failed to litigate this action after defense counsel's withdrawal and have

not proffered any good faith basis or explanation for their underpayment of wages.  Because

Plaintiff cannot recover under both the FLSA and the NYLL for the same conduct, *see Rana*, 887

F.3d at 123 (noting that the FLSA and the NYLL do not allow "duplicative liquidated damages

for the same course of conduct"), and under the NYLL an employee may receive both liquidated

damages and prejudgment interest, the Court awards liquidated damages to Plaintiff under the

NYLL, *see* NYLL § 198(1-a) (providing that the plaintiff in a wage claim under the NYLL may

recover "prejudgment interest . . . and . . . an additional amount as liquidated damages"); *Reilly v.*

*Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999) (awarding both liquidated damages

and prejudgment interest under the NYLL); *Newman v. W. Bar & Lounge, Inc.*, No.

20-CV-1141, 2021 WL 2401176, at *11 (E.D.N.Y. June 11, 2021) (stating that "where a plaintiff

has already received an award of FLSA liquidated damages," the plaintiff is "entitled to an award

of prejudgment interest only on [damages under the NYLL that do not overlap with those under

the FLSA] for which liquidated damages pursuant to the FLSA were not assessed" (alteration in

original) (quoting *McFarlane v. Harry's Nurses Registry*, No. 17-CV-6350, 2020 WL 7186791,

at *4 (E.D.N.Y. Dec. 7, 2020))).

The Court awards Plaintiffs liquidated damages for Plaintiffs' unpaid minimum wage and overtime pay under the NYLL, equal to "one hundred percent of the total of . . . underpayments found to be due" to Plaintiff.  NYLL § 663(1); *see also Paulino v. S & P Mini Mkt. Corp.*, --- F. Supp. 3d ---, 2025 WL 1932906, at *7 (S.D.N.Y. July 15, 2025) ("The NYLL allows employees to recover 'an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due' unless the employer 'proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'" (citation omitted))*; Jimenez*, 744 F. Supp. 3d 254–55 (similar); *Soto*, 2024 WL 3730115, at *8 ("The amount of liquidated damages is equal to 100% of the amount owed to the [p]laintiffs in unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours." (quoting *Villanueva v. 179 Third Ave Rest. Inc.*, 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020), *report and recommendation adopted*, 2021 WL 2139441 (S.D.N.Y. May 26, 2021))).  Accordingly, the Court awards Plaintiff $16,536.90 in liquidated damages equal to the amount Plaintiff requested for the amount of unpaid minimum and overtime wages owed to him.

### 3.  Statutory damages under the Wage Theft Prevention Act

Under the NYLL, if a wage notice under § 195 is not provided "within ten business days of" the employee's "first day of employment," the employee "may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198(1-b); *see also Ramos*, 2024 WL 3954330, at *5 (quoting NYLL § 198(1-b)); *Salamanca*, 2021 WL 3275902, at *7; *Carter*, 78 F. Supp. 3d at 570 (citing NYLL § 198(1-b)).  "Statutory damages for failure to provide wage statements are $250 dollars 'for each work day that the violations occurred or continue to occur,' not to exceed $5,000." *Ramos*, 2024 WL 3954330, at *5 (quoting NYLL § 198(1-d)); *Duan*,

2024 WL 4250262, at *12 (quoting NYLL § 198(1-d)) ("After February 27, 2015, violations of [NYLL §] 195(3) carry damages of $250 per workday, up to a maximum of $5,000").

The Court awards Plaintiff the maximum statutory damages of $5,000 for violations of NYLL § 195(1), and $5,000 for violations of NYLL § 195(3) for a total of $10,000 because Plaintiff worked without a wage notice for more than 100 days and without wage statement for more than 20 days after February 27, 2015. *See Duan*, 2024 WL 4250262, at *12 (recommending that the plaintiff be awarded $10,000 because the plaintiffs "worked without a wage notice for more than 100 days and without a wage statement for more than 20 days after February 27, 2015); *Rodriguez v. Eden Rose, Corp.*, No. 22-CV-500, 2023 WL 2969311, at *12 (E.D.N.Y. Mar. 3, 2023) (recommending that the plaintiff be awarded $10,000 dollars "[b]ecause [the] plaintiff worked without a wage notice for more than 100 days and without a wage statement for more than 100 days after February 27, 2015"), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 22-CV-500 (E.D.N.Y. June 21, 2023)

### 4.  Prejudgment interest

Section 198(1-a) of the NYLL allows an employee who prevails in an action on a wage claim to recover "prejudgment interest as required under the civil practices and rules." *See Rana*, 887 F.3d at 123 (stating that the NYLL liquidated damages provision permits employees to recover "prejudgment interest as required under the civil practice law and rules"). The applicable interest rate is 9% per annum. *See Ramirez v. Lin*, 830 F. App'x 672, 673 (2d Cir. 2020) (applying a 9% interest rate to prejudgment interest under the NYLL (citing *Ramirez v. Roka Japanese Food*, No. 18-CV-296, 2019 WL 2372866, at *10 (E.D.N.Y. June 5, 2019))); *Jones v. Pawar Bros. Corp.*, No. 17-CV-3018, 2023 WL 6214213, at * 4 (E.D.N.Y. Sept. 25, 2023) ("The NYLL provides for an award of pre-judgment interest in addition to liquidated

36

damages, calculated at 9% per year." (citations omitted)); *Tarax v. Blossom West Inc.*, No. 19-CV-6228, 2022 WL 2132749, at *4 (S.D.N.Y. June 14, 2022) ("Pursuant to New York state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." (citation omitted)); *Feuer v. Cornerstone Hotels Corp.*, No. 14-CV-5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan. 24, 2020) (citing N.Y. C.P.L.R. §§ 5001(b), 5004). "Interest shall be computed from the earliest ascertainable date the cause of action existed," or "[w]here such damages were incurred at various times, interest shall be computed upon each such item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b).

Because Defendant paid Plaintiff below the New York minimum wage over a period of several months, the Court calculates prejudgment interest from a reasonable intermediate date. *See Feuer*, 2020 WL 401787, at *12 n.22 (calculating prejudgment interest on unpaid wages from a date halfway between the first and last days of the employee's employment); *Ying Ying Dai*, 490 F. Supp. 3d at 662 (calculating prejudgment interest on unpaid wages from the midpoint of the first and last date of underpayment); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (determining prejudgment interest as the "midway point between when plaintiff[s] began and ceased working for defendant[s]." (alterations in original) (internal quotation marks omitted)). Defendant employed Plaintiff from approximately November 3, 2016 to June 18, 2021. (Compl. ¶¶ 31, 37.) The Court therefore calculates interest from February 24, 2019, the date halfway between November 3, 2016 and June 18, 2021. Plaintiff is

entitled to prejudgment interest on his wage claim damages from June 18, 2021 until the date judgment is entered, at a rate of $6.54 per day.[12]

### 5. Attorney's fees

Plaintiff seeks an award of $24,490 in attorney's fees, which represents 69.6 hours of work performed on this case by the law firm Cilenti & Cooper, PLLC. (Pl.'s Mem. 6; Billing Statement, annexed to Cilenti Decl., Docket Entry No. 55-3.)

Under both the FLSA and the NYLL, prevailing plaintiffs are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 216(b); NYLL § 198(1), (1-a); *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–53 (2010)).

Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case . . .." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022) (quoting *Barfield*, 537 F.3d at 151); *see also Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934

---

[12] The Court calculates prejudgment interest as follows: ([$16,536.90 in unpaid minimum and overtime wages + $10,000 in violation of NYLL's wage notice and wage statement law] × [9% interest /365 days]).

F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 357–58 (2d Cir. 2021) (same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill*, 522 F.3d at 190); *see also Ortiz*, 843 F. App'x at 359 (same). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)); *Fisher*, 948 F.3d at 606–07 (same). "Courts look to '[b]oth "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint.'" *Holick*, 48 F.4th at 106 (quoting *Barfield*, 537 F.3d at 152). Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see also id.* at 190 (clarifying that district courts should consider, among others, the factors laid out in *Johnson*, 488 F.2d at 717–19; *see also, e.g.*, *Lilly*, 934 F.3d at 230 (same).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Millea*, 658 F.3d at166 (quoting *Arbor Hill*, 522 F.3d at 183); *see also SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*, No. 23-7313, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (quoting *Millea*); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d at 183–84)); *Grant v. Lockett*, No. 19-469, 2021 WL 5816245, at *7 (2d Cir. Dec. 8, 2021) ("Courts calculate a presumptively reasonable fee under § 1988 by 'determining the appropriate billable hours expended and setting a reasonable hourly rate, taking account of all case-specific variables.'" (quoting *Lilly*, 934 F.3d at 229–30)).  The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs."  *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")).

### A.   Reasonable hourly rate

Plaintiffs seek attorneys' fees at the hourly rate of $400 for the principal attorney, Justin Cilenti, and $100 for the paralegal, Marcela Cardoso.  (Pl.'s Mem. 6; Billing Statement).  In

support, Plaintiff states that Cilenti's rates have been found reasonable in other FLSA cases. (Pl.'s Mem. 6-7 (collecting cases).)  In his declaration, Cilenti states that he "has over twenty-five years of experience in civil litigation since being admitted to the practice of law in 1997" and "Plaintiff's attorneys have handled over 1,000 wage and hour cases over the last fifteen years."  (Cilenti Decl ¶ 45.)  Plaintiffs do not provide any information about Cardoso.

"The reasonable hourly rate is the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Lilly*, 934 F.3d at 230 (alterations in original) (quoting *Arbor Hill*, 522 F.3d at 190); *see also Agudath*, 2023 WL 2637344, at *2 (same).  Such rates should be based on rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  *Cruz v. Loc. Union No. 3 of Int'l Brotherhood. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)); *see also Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) ("[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'"  (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012))).  Determination of the prevailing market rates is "an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with rates prevailing in the district.'"  *Chaparro*, 2021 WL 5121140, at *1 (quoting *Townsend*, 679 F.3d at 59).  "[T]he 'community' . . . is the district where the district court sits."  *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)).

In what has become known as the "forum rule," courts assess the reasonableness of hourly rates by comparing the rates requested with the prevailing rates charged by attorneys practicing in the district where the court sits. *See Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 547 (2d Cir. 2023) (discussing forum rule (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172, 175–76 (2d Cir. 2009))); *see also Chaparro*, 2021 WL 5121140, at *1–2; *Leevson v. Aqualife USA Inc.*, 770 F. App'x 577, 583 (2d Cir. 2019) (noting that district courts have "conclud[ed] that approximately $300 to $450 was a reasonable hourly rate for partners within the Eastern District of New York" (citing *Griffin v. Astro Moving & Storage Co.*, No. 11-CV-1844, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015))); *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243–44 (E.D.N.Y. 2025) (adjusting reasonable hourly rates in the Eastern District for inflation and market conditions to $450 to $650 for partners, $300 to $450 for senior associates, $150 to $300 for junior associates, and $100 to $150 for paralegals (footnotes omitted)); *Shuford v. Cardoza*, No. 17-CV-6349, 2024 WL 865989, at *3 (E.D.N.Y. Feb. 28, 2024) ("[C]ourts in this [D]istrict have generally awarded fees . . . at an hourly rate of $200 to $450 per hour for partners, $200 to $325 for senior associates, and $100 to $200 for junior associates." (citing *Crews v. County of Nassau*, No. 06-CV-2610, 2019 WL 6894469, at *7 (E.D.N.Y. Dec. 18, 2019))); *Santander Consumer USA, Inc. v. Port Auth. of N.Y. & N.J.*, No. 20-CV-1997, 2023 WL 5758995, at *3 (E.D.N.Y. Sept. 6, 2023) ("[T]here is also precedent within this District awarding rates as high as $600 depending upon the experience of the lawyer and complexity of the matter." (citing *Aptive Env't, LLC v. Vill. of E. Rockaway*, No. 19-CV-3365, 2022 WL 5434178, at *4 (E.D.N.Y. July 8, 2022), *report and recommendation adopted*, 2022 WL 4376618 (E.D.N.Y. Sept. 22, 2022))). In addition, "district courts should not treat an attorney's status as a solo practitioner as grounds for an automatic reduction in the reasonable

hourly rate." *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 97 n.6 (2d Cir. 2006); *Porzig v. Dresdner, Kleinwort, Benson, N.A. LLC*, 497 F.3d 133, 143 n.6 (2d Cir. 2007) (same); *see Linde v. Arab Bank, PLC*, No. 04-CV-2799, 2023 WL 9232942, at *6 (E.D.N.Y. Nov. 28, 2023) (quoting *McDonald*), *report and recommendation adopted*, 2024 WL 3873708 (E.D.N.Y. Aug. 19, 2024). As for paralegals, courts have concluded that $70 to $100 is "the typical range of awarded hourly rates for legal support staff." *Sanchez Flores v. El Bukanitas Inc.*, No. 22-CV-6751, 2024 WL 1051161, at *14 (E.D.N.Y. Feb. 14, 2024) (citation omitted), *report and recommendation adopted*, Order adopting Report and Recommendation, No. 22-CV-6751 (E.D.N.Y. Mar. 19, 2024); *Ladino v. Cordova*, 21-CV-2449, 2024 WL 968898, at *6 (E.D.N.Y. Feb. 14, 2024) (same), *report and recommendation adopted*, 2024 WL 967635 (E.D.N.Y. Mar. 6, 2024).

The Court finds Plaintiff's attorney's rates reasonable. Cilenti has been practicing for over 25 years since 1997 and his practice has handled over 1,000 wage and hour cases over the last fifteen years. (Cilenti Decl ¶ 45.) A $400 per hour rate is consistent with rates for attorneys with similar experience in other cases. *See Sevilla v. House of Salads One LLC*, No. 20-CV-6072, 2022 WL 954740, at *12 (E.D.N.Y. Mar. 30, 2022) (finding $400 to be a reasonable rate for a managing member of a law firm with over 30 years of experience, including considerable experience in FLSA and NYLL cases); *Martinez v. New 168 Supermarket LLC*, No. 19-CV-4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (finding $400 to be a reasonable rate for an attorney with over 20 years of experience, including handling over 500 wage and hour cases).

Plaintiff seeks an hourly rate of $100 for work performed by Cardoso and a reasonable client would pay a rate of $70 to $100 per hour. Plaintiff's requested rate is at the top of end of

rates applicable to legal support staff in this district.  *See Sanchez Flores*, 2024 WL 1051161, at

*14 ("The typical range of awarded hourly rates for legal support staff is $70 to $100." (citations

omitted)).  Although within the range of what a reasonable client would pay, Plaintiff does not

provide any information about Cardoso's work experiences or qualifications to allow the Court

to justify awarding a rate at the higher range.  In view of the lack of information, the Court

reduces Cardoso's hourly rates to $70.  *See Ladino*, 2024 WL 968898, at *6 (recommending that

the court reduce the hourly rates of paralegals to $70 where the plaintiff did not provide any

"information about the[] paralegals' individual experiences or work histories").

### B.  Hours reasonably expended

In reviewing a fee application, courts may review the expenditure of hours submitted by

counsel, and adjust to a reasonable amount, as determined in light of the particulars of the case.

*See Agudath*, 2023 WL 2637344, at *2 ("When reviewing a fee application, a district court

should 'examine[ ] the particular hours expended by counsel with a view to the value of the work

product of the specific expenditures to the client's case,' and if it 'concludes that any expenditure

of time was unreasonable, it should exclude these hours' from the fee calculation."  (alteration in

original) (quoting *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997))); *Schutter v.

Tarena Int'l, Inc.*, No. 21-CV-3502, 2024 WL 4118465, at *15 (E.D.N.Y. Sept. 9, 2024) ("In

determining whether the number of hours worked is reasonable, 'a district court should

"examine[] the particular hours expended by counsel with a view to the value of the work

product of the specific expenditures to the client's case."'"  (alteration in original) (quoting

*Chaparro*, 2021 WL 5121140, at *2)).  To obtain an award of attorneys' fees, a petitioner must

provide contemporaneous time records that support the date work was performed, the nature of

the hours expended, and the work done.  *See Raja v. Burns*, 43 F.4th 80, 86–87 (2d Cir. 2022)

(explaining that the party seeking attorneys' fees "must prepare and submit to the district court

contemporaneous time records of the work performed, specifying the date, the hours expended, and the nature of the work done" (internal quotation marks omitted)); *Scott v. City of New York*, 643 F.3d 56, 57 (2d. Cir. 2011) ("[A] district court's 'personal observation' of an attorney's work is not by itself a sufficient basis for permitting a deviation and awarding fees in the absence of contemporaneous records . . . ."); *Morales v. Fine Design Masonry, Inc.*, No. 22-CV-5817, 2024 WL 4120403, at *3 (E.D.N.Y. June 25, 2024) (noting that "the party seeking attorney[s'] fees [must] submit sufficient evidence to support the hours worked and the rates claimed" and "must support its application by providing contemporaneous time records that detail for each attorney, the date, the hours expended, and the nature of the work done" (first quoting *Maldonado v. Srour*, No. 13-CV-5856, 2016 WL 5864587, at *1 (E.D.N.Y. Oct. 6, 2016); and then quoting *Torcivia v. Suffolk County*, 437 F. Supp. 3d 239, 250-51 (E.D.N.Y. 2020))), *report and recommendation adopted*, 2024 WL 3716032 (E.D.N.Y. Aug. 7, 2024).  Block billing, "the practice of lumping multiple distinct tasks into a single billing entry — is generally disfavored because it can complicate the district court's task of determining the reasonableness of the billed hours." *Raja*, 43 F.4th at 87 (citing *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017)). However, "the practice is by no means prohibited in this Circuit because block billing will not always result in inadequate documentation of an attorney's hours" and is "permissible as long as the district court is still able 'to conduct a meaningful review of the hours' for which counsel seeks reimbursement." *Id.* (quoting *Restivo*, 846 F.3d at 591).  "In determining the first component of the lodestar — the number of hours reasonably expended — the district court may exclude hours that are 'excessive, redundant, or otherwise unnecessary.'" *H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (quoting *Raja*, 43 F.4th at 87), *cert. denied*, 144 S. Ct. 490 (2023).  "[T]he district court also 'has discretion simply to deduct a reasonable percentage of

the number of hours claimed as a practical means of trimming fat from a fee application.'" *Id.* at

126 (quoting *Raja*, 43 F.4th at 87).

Plaintiffs have provided sufficiently detailed records showing the breakdown of the hours

billed to this case. The total number of hours billed in this matter was 69.6 hours and "[c]ourts

in this circuit have approved fees where the attorneys billed similar number of hours in FLSA

and NYLL default cases." *Diaz v. KC Plumbing, LLC*, No. 19-CV-4321, 2021 WL 7500316, at

*15 (E.D.N.Y. Mar. 1, 2021) (concluding that 106 hours billed was reasonable); *Baltierra v.

Advantage Pest Control Co.*, No 14-CV-5917, 2015 WL 5474093, at *13 (S.D.N.Y. Sept. 18,

2015) (approving fees for 108.2 hours billed in an FLSA and NYLL default judgment case).

### C.    Lodestar calculation

The lodestar is "calculated as the product of the reasonable number of hours worked and

a reasonable hourly rate." *Agudath*, 2023 WL 2637344, at *1 (citing *Arbor Hill*, 522 F.3d at

183–84). Accordingly, the Court calculates the lodestar for Mr. Cilenti by multiplying his total

hours (62.3) by his hourly rate ($400), resulting in an award of $24,920.00 in fees. Similarly, the

Court calculates the lodestar for Cardoso by multiplying their total hours (7.3) by their hourly

rate ($70.00), resulting in an award $511.00 in fees. Defendants owe Plaintiff a total of $25,431

in attorney's fees. However, Plaintiff requests $24,490 in attorney's fees and the Court awards

only the amount requested by Plaintiff.[13]

---

[13] Plaintiff's billing statement contains an error in its entry from September 8, 2023. Cilenti billed 0.3 hours to the matter, and the statement incorrectly calculates the amount owed as $40.00 when it should be $120.00. (*See* Billing Statement.) Furthermore, the total at the bottom of the statement is incorrect as the values in the "Amount Due" column add up to $25,570.00 and with the corrected September 8, 2023 entry, the total amount due would be $25,650.00 based on the requested paralegal rate. (*See* Billing Statement.)

6.    **Costs**

Plaintiff argues that he is entitled to $1,131.00 in costs, consisting of filing fees, service of process fees, and deposition reporter fees. (Pl.'s Mem. 7; Billing Statement.)

"An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Fisher*, 948 F.3d at 600 (alteration in original) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).  As with attorneys' fees, "[t]he fee applicant must submit adequate documentation supporting the requested . . . costs." *Id.*

The Court finds that Plaintiffs' requested costs are reasonable and supported by adequate documentation.  Because Plaintiffs' request for costs covers only "reasonable out-of-pocket expenses . . . which are normally charged fee-paying clients," and because these costs are supported by adequate documentation, the Court grants Plaintiffs' request for costs in the amount of $1,130.00. *Id.* (quoting *Reichman*, 818 F.2d at 283).

**III.   Conclusion**

For the foregoing reasons, the Court strikes Defendant's Answer, and the Clerk of Court is directed to enter default against Defendants pursuant to Fed. R. Civ. P. Rule 55(a).  The Court grants in part and denies in part Plaintiff's motion for default judgment.  The Court grants Plaintiffs' motion for unpaid minimum wages, unpaid overtime, and Wage Theft Prevention Act claims.  The Court denies Plaintiff's motion for spread of hours pay.  The Court awards damages against Defendants in the amount of $43,073.80 to Plaintiff, consisting of: (1) $16,536.90 in unpaid wages for violations of the unpaid wage and overtime provisions of the NYLL; (2) $16,536.90 in liquidated damages; and (3) $10,000.00 in statutory damages.  Prejudgment interest shall be added to this amount, to be calculated at a rate of $6.54 from February 24, 2019, until the date judgment is entered.  If any amount of the judgment remains unpaid within ninety

days after judgment or after the time to appeal has expired if no appeal is pending, Plaintiffs'

damages under the NYLL will be increased by fifteen percent in accordance with NYLL

§ 198(4).[14]  In addition, the Court awards Plaintiffs $24,490.00 in attorneys' fees and $1,130.00

in costs.

Dated:  September 17, 2025
           Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge


---

[14]  NYLL § 198(4) states that "[a]ny judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent."  NYLL § 198(4); *see also Leo v. Province Therapeutics, LLC*, No. 23-CV-05418, 2024 WL 2923945, at *6 (E.D.N.Y. May 21, 2024), *report and recommendation adopted*, 2024 WL 2891798 (E.D.N.Y. June 10, 2024).  The increase applies only to Plaintiffs' damages awarded under the NYLL.  *Lopez v. Martha's Cocina Mexicana, LLC*, No. 23-CV-2053, 2023 WL 9603828, at *16 n.13 (E.D.N.Y. Dec. 27, 2023) ("The increase applies only to damages awarded under state law.").